UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAYMOND T. SANCHEZ,<br><br>    Plaintiff,<br><br>  v.<br><br>ANDREW M. SAUL, Commissioner of Social Security,<br><br>    Defendant. | Case No.: 1:19-cv-01163-BAM<br><br>**ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT** |

## INTRODUCTION

Plaintiff Raymond T. Sanchez ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his applications for disability insurance benefits under Title II of the Social Security Act and supplemental security income under Title XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Barbara A. McAuliffe.[1]

Having considered the parties' briefs, along with the entire record in this case, the Court finds that the decision of the Administrative Law Judge ("ALJ") is supported by substantial evidence in the

---

[1] The parties consented to have a United States Magistrate Judge conduct all proceedings in this case, including entry of final judgment, pursuant to 28 U.S.C. § 636(c). (Doc. Nos. 9, 16, 17.)

record as a whole and is based on proper legal standards. Accordingly, the Court affirms the agency's determination to deny benefits.

**FACTS AND PRIOR PROCEEDINGS**

Plaintiff filed applications for disability insurance benefits and supplemental security income on May 29, 2013. AR 347-58.[2] Plaintiff alleged that he became disabled May 24, 2013, due to knee and back pain. AR 347-58, 392. Plaintiff's applications were denied initially and on reconsideration. AR 126-127, 174-175. Subsequently, Plaintiff requested a hearing before an ALJ. ALJ Vincent Misenti held a hearing on March 23, 2016. AR 179-88. ALJ Misenti issued an order denying benefits on May 23, 2016. AR 13-28. Plaintiff sought review of the ALJ's decision. The Appeals Council remanded the decision back to the ALJ based on finding "new and material evidence." AR 195. ALJ Joyce Frost-Wolf held a re-hearing on November 14, 2017. AR 17-28. The ALJ Frost-Wolf issued a partially favorable decision on June 18, 2018. AR 17-28. Plaintiff again sought review of the ALJ's decision. The Appeals Council denied the appeal on April 9, 2019. AR 6-12. This appeal followed.

**Hearing Testimony**

The ALJ held a re-hearing on November 14, 2017, in Fresno, California. Plaintiff appeared with her attorney, Johnathan Pena. Cheryl Chandler, an impartial vocational expert, also appeared. AR 98.

Plaintiff testified that he lives in a single-story home with his wife and parents. AR 104. Plaintiff testified that his father is under kidney dialysis and Plaintiff watches him to make sure he does not fall when he comes home from treatment. AR 105. Plaintiff testified that he did not graduate from high school, but he received his GED while in the United States Army. AR 105. Plaintiff has had no vocational or educational training since receiving his GED. AR 105.

Plaintiff testified that he worked as a maintenance mechanic for a poultry farm where he ensured that electrical motors function properly. AR 105. The most Plaintiff would lift in that position was about 90 pounds. AR 106. Prior to working at the poultry farm, Plaintiff first worked as a delivery driver and then as a supervisor for another company, Gardner-Rossi. AR 106. As supervisor, Plaintiff

---

[2]   References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

would handle sales and deliveries of poultry. AR 106. While in that position, Plaintiff would lift 100 pounds. AR 106-07.

Plaintiff testified that he hurt his back in 2002, while working for Gardner-Rossi. AR 107. Plaintiff is still able to mow the lawn but is unable to do both the front and back. AR 107. Plaintiff is able to do some yard work like pulling weeds but not for long as his knees and back will ache. AR 107 He mostly stays in bed trying to stretch. AR 107. Plaintiff testified that he is standing, moving, or sitting about 20 percent of the day. AR 107. When asked about changing positions during the hearing, Plaintiff testified that he is always in constant pain and is most comfortable laying down.

When asked about his medication, Plaintiff testified that he experiences no relief from his prescribed medications. AR 109. However, he is still taking Gabapentin, and his doctors at the VA told him to up his dosage before trying something else. AR 109. Plaintiff is getting relief from his psychotropic medications for anxiety and depression. AR 109. Plaintiff also testified that he experiences some relief from using a TENs unit, which he uses three-four times a day. AR 110. Plaintiff has also tried acupuncture which has eliminated some of the pain. AR 110. Plaintiff has tried home exercises and stretching at home which he does daily and has some relief. AR 110. Plaintiff has received injections to ease the pain, however, the medication will wear off within a week and the pain returns. AR 111.

Plaintiff has used a cane to aid with walking on and off since 2012. AR 111. Plaintiff is able to take walks about a mile a day while taking breaks. AR 111-12. Plaintiff further testified that he is unable to wear shoes due to pain on the bottom of his feet. AR 112.

Plaintiff testified that he has had cancer in the past, and two surgeries related to his cancer. AR 112. He has more tests to see if he has come out of remission. AR 112.

In response to questions from his attorney, Plaintiff testified that he experiences increased pain after mowing the lawn and walking. AR 113. For example, Plaintiff has increased back pain after mowing the lawn and increased leg pain after taking walks. AR 113. The increased leg pain after walks causes Plaintiff to lose sleep. AR 113. Plaintiff testified that he is only able to sit for half an hour and to stand for about 20 minutes at a time. AR 114. Plaintiff testified that he experiences radiating pain from his back to his legs daily. AR 114-15. At times, the pain in his left leg is so bad he

3

cannot even be touched. AR 115. It is routine for Plaintiff to lose sleep due to the pain, about 18 days out of 30. AR 115. Plaintiff further testified that he is able to carry groceries weighing about 20 pounds approximately 5 blocks. AR 115-16.

Following Plaintiff's testimony, the ALJ elicited testimony from the VE. The VE classified Plaintiff's past work as farm equipment mechanic I and truck driver heavy. The ALJ also asked the VE hypotheticals. For the first hypothetical, the ALJ asked the VE to consider an individual the Plaintiff's age, education and work history who would be able to work at the light exertional level with occasional stooping, crouching, and crawling and can perform non-complex routine tasks. AR 118. The VE testified that such an individual could not perform the Plaintiff's past work but that there is other work that the individual can perform, including unskilled light work. AR 118.

For the second hypothetical, the ALJ asked the VE to consider an individual the Plaintiff's age, education, and work history. The individual would start from the light exertional level, could stand and walk for a maximum combined time of three to four hours with occasional balancing, stooping, kneeling, crouching, and crawling. AR 118-19. The VE testified that such an individual could perform a restricted range of light jobs that would allow for a sit/stand option. AR 119. The ALJ also asked if the stand and walk maximum was changed to only three hours instead of three to four hours. AR 119. The VE testified that if a person can sit and stand at will and continue to be productive, the person would not necessarily be restricted to sedentary work. AR 119. The VE further testified that such a person could perform some work such as cashier, storage facility rental clerk, and courier. AR 120.

For the third hypothetical, the ALJ asked the VE to consider the same individual a hypothetical two, but the individual would require two additional breaks in a workday to address pain or fatigue and those breaks would run up to 10 minutes and be in addition to the breaks already provided. AR 120. The VE testified that based on his experience the individual would not be able to perform any work. AR 120.

Plaintiff's counsel then asked the VE a hypothetical. AR 122. Counsel asked the VE to consider an individual similar to the individual in the ALJ's second hypothetical, but consider the individual needed a cane for both balance and ambulation 50 percent of the days. AR 122. The VE testified that such an individual could not perform the Plaintiff's past work. AR 123.

The ALJ then clarified his second hypothetical to be that of an individual could stand/walk for only three hours. AR 123. The VE testified that it would not change his answer, however, if the individual required a cane for support, as in counsel's hypothetical, the individual could only perform sedentary work. AR 123.

**Medical Record**

The relevant medical record was reviewed by the Court and will be referenced below as necessary to this Court's decision.

**The ALJ's Decision**

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff was not disabled under the Social Security Act prior to September 2, 2017 but became disabled on that date and has continued to be disable. AR 18. Specifically, the ALJ found that Plaintiff met the insured status requirements through December 31, 2017. He had not engaged in substantial gainful activity since the alleged onset date. AR 19. The ALJ identified degenerative disc disease of the lumbar spine as a severe impairment. AR 19. The ALJ determined that the severity of Plaintiff's impairments did not meet or equal any of the listed impairments. AR 21.

Based on a review of the entire record, the ALJ found that since May 7, 2013 Plaintiff retained the residual functional capacity ("RFC") to perform light work except he can stand and walk for a total of three hours in a workday, and he can perform occasional balancing, stooping, kneeling, crouching, and crawling. AR 21. With this RFC, the ALJ found that since May 7, 2013, Plaintiff could not perform his past relevant work. AR 26. The ALJ also found that on September 2, 2017, the Plaintiff's age category changed to an individual of advanced age. AR 26. The ALJ found that prior to September 2, 2017, there were jobs that existed in the national economy that the Plaintiff could perform. AR 26. However, after September 2, 2017, there are no jobs that exist in significant numbers in the national economy that the Plaintiff could perform. AR 27. The ALJ therefore concluded that Plaintiff had not been under a disability prior to September 2, 2017, but became disabled on that date and has continued to be disabled. His disability is expected to last twelve months past the onset date. AR 27.

///

///

# SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g., Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Commissioner applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Servs.*, 812 F.2d 509, 510 (9th Cir. 1987).

# REVIEW

In order to qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). A claimant must show that he or she has a physical or mental impairment of such severity that he or she is not only unable to do his or her previous work, but cannot, considering his or her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

# DISCUSSION[3]

Plaintiff contends that the RFC does not reflect the substantial evidence of record since May 7, 2013, the alleged onset date. (Doc. No. 21 at 14.) Specifically, Plaintiff argues that (1) the substantial evidence of record establishes that Plaintiff's severe degenerative disk disorder reduced his RFC to at least a sedentary level, including the need to use a cane for extended ambulation and standing; and (2) the substantial evidence of record establishes that Plaintiff suffers from severe adjustment disorder with anxious mood which reduced his mental residual functional capacity ("MRFC") to at least simple repetitive tasks. (Doc. No. 21 at 14, 25.)

### A. The ALJ Properly Evaluated the Medical Evidence of Physical Residual Functional Capacity

Plaintiff argues the substantial evidence of record establishes that Plaintiff's severe degenerative disk disorder reduced his RFC to at least a sedentary level, including the need to use a cane for extended ambulation and standing. (Doc. No. 21 at 14.)   In so arguing, Plaintiff contends that the record is replete with evidence that Plaintiff's physicians have found that Plaintiff's use of a cane is medically necessary to ambulate and stand. (Doc. No. 21. At 15.) Plaintiff identifies an opinion from pain treating source Dr. Amireh who documents that Plaintiff's prescribed plan of care included use of a cane to prevent falls, the use of his walker, and/or to hold on to bars at home, and to be careful with their surroundings when in public places. AR 56-57, 65-66. Dr. Moore, Plaintiff's acupuncturist, concluded that Plaintiff requires a cane on bad days, due to pain and weakness, numbness. AR 625. Plaintiff also argues that there is testimonial evidence that Plaintiff requires a cane to ambulate, in the form of Plaintiff's testimony.

Plaintiff's argument is not persuasive. "[T]he full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." Social Security Ruling 83-10; *Davis v. Berryhill*, 743 Fed.App'x. 846, 850 (9th Cir. 2018) (noting that "light work" entails "standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday,"

---

[3] The parties are advised that this Court has carefully reviewed and considered all of the briefs, including arguments, points and authorities, declarations, and/or exhibits.  Any omission of a reference to any specific argument or brief is not to be construed that the Court did not consider the argument or brief.

7

and "[s]itting may occur intermittently during the remaining time.") (citing SSR 83-10); *Ocegueda v. Colvin*, 630 Fed.App'x. 676, 678 (9th Cir. 2015) ("Under the regulations as interpreted by the Commissioner, a 'full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8–hour workday.'") (citing SSR 83–10); *Holman v. Shalala*, 42 F.3d 1400 (9th Cir. 1994) (stating that light work requires six hours of standing or walking). The Court therefore finds no error in the ALJ's determination that Plaintiff could perform light work despite finding that Plaintiff could stand and walk for no more than three to four hours in a workday.

"It is clear that it is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity." *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001). An RFC "is the most [one] can still do despite [his or her] limitations" and it is "based on all the relevant evidence in [one's] case record," rather than a single medical opinion or piece of evidence. 20 C.F.R. § 404.1545(a)(1). While it is true that an ALJ is "not qualified to interpret raw medical data in functional terms," *Padilla v. Astrue*, 541 F.Supp.2d 1102, 1106 (C.D. Cal. 2008), the ALJ is not precluded from making an RFC finding that differs from assessments contained in medical source statements. Indeed, "[t]he ALJ's RFC determination need not precisely reflect any particular medical provider's assessment." *Holcomb v. Comm'r Soc. Sec.*, No. 2:17-cv-02268-KJM-CKD, 2019 WL 176266, at *4 (E.D. Cal. Jan. 11, 2019) (citing *Turner v. Comm'r Soc. Sec. Admin.*, 613 F.3d 1217, 1222-23 (9th Cir. 2010)).

Here, the ALJ cited medical evidence and treatment records to support his RFC finding that Plaintiff could perform a range of light work with the exception that Plaintiff can stand and walk for a total of three hours in a workday, and he could perform occasional balancing, stooping, kneeling, crouching, and crawling.

In 2013, Dr. Steven Stolz, consultative examiner, opined that Plaintiff had chronic lower back pain, psychiatric, restless leg syndrome, and prior renal cell carcinoma. Dr. Stolz observed that Plaintiff walked slowly but did not require an assistive device and had no focal or asymmetrical finding. AR 602. Dr. Stolz opined that Plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently, stand and walk for three to four hours in an eight-hour day, and sit for six hours in an eight-hour day, could occasionally climb, stoop, balance, kneel, crouch, and crawl. AR 602. The

8

ALJ granted significant weight to Dr. Stolz opinion as it was consistent with the overall record and the limitation on walking was supported by the history of back surgeries, continued treatment for back pain, and the intermittent use of a cane. AR 24.

Plaintiff's acupuncturist Tim Moore, L.Ac., completed a medical source statement in July 2017. Acupuncturist Moore observed that Plaintiff's primary symptoms were constant debilitating back pain ranging from a 3-8 on a scale of 1-10. AR 623-24. Acupuncturist Moore opined that Plaintiff could walk one to two city blocks without rest or severe pain, could sit for 20 minutes at a time for a total of about four hours sitting in an 8-hour work day, could stand for about 10 minutes at a time for a total of less than two hours standing and walking in an 8-hour workday, needed a job that permitted shifting positions at will and walking for 5 minutes every 15 minutes, needed unscheduled breaks, could lift and carry up to 10 pounds, could never twist or climb ladders, rarely stoop and crouch, and occasionally climb stairs. AR 624-26. Mr. Moore did not opine that the Plaintiff required the use of a cane. The ALJ gave the opinion "limited weight" as Mr. Moore is not a medical doctor, opines as to impairments to arms and wrists not documented elsewhere in the record, and states an opinion on Plaintiff's condition prior to beginning treatment. AR 25. Finally, the ALJ found that the limitations were "overly restrictive considering [Plaintiff's] wide range of activities." AR 25.

On October 11, 2017, Plaintiff saw Dr. Amireh for his back pain. Dr. Amireh prescribed a plan of care which included the use of an assistive device to prevent falls, but also included that Plaintiff should attempt to perform all activities as close to normal as possible. AR 1176-77. On October 26, 2017, Plaintiff had an additional visit with Dr. Amireh where he did not require a cane to ambulate. AR 1172.

Further, Plaintiff testified that he was able to perform tasks like mowing the lawn and some yard work. He has found some relief in using a TENs unit, acupuncture, and daily exercises. Plaintiff also testified that he is able to walk about a mile with breaks and can carry groceries up to 5 blocks weighing about 18-20 pounds. Plaintiff also testified that he has increased pain after walking or doing yard work, he can sit for 30 minutes and stand for 20 minutes. Plaintiff further testified that he uses his cane "off and on" and uses his cane during walks for "insurance" that he will be able to make it home. AR 111. Plaintiff further testified that he used his cane when the pain was worse. AR 111. Plaintiff did

not testify that he requires a cane at all times. Moreover, the ALJ found that Plaintiff's statements about the intensity, persistence, and limiting effects of his symptoms are inconsistent because Plaintiff "reported a wide range of activities of daily living" including " watched television, walked to town to get the newspaper, went to the store for a soda, napped, walked to his daughter's apartment, did household cleaning and yard work, took care of his personal grooming needs, prepared simple meals, shopped two times a week for one to two hours, vacuumed, mowed the lawn, did minor household repairs, drove, went out alone, rode a bicycle, and visited others." AR 22.

The VE testified that an individual with Plaintiff's age, experience, and education, who could stand/walk for no more than three to four hours could perform a restricted range of light jobs that would allow for a sit/stand option. AR 119.  The ALJ also asked if the stand and walk maximum was changed to only three hours instead of three to four hours. AR 119. The VE testified that if a person can sit and stand at will and continue to be productive, the person would not necessarily be restricted to sedentary work. AR 119. The VE further testified that such a person could perform some work such as cashier, storage facility rental clerk, and courier. AR 120.

The record, including Plaintiff's testimony, support the ALJ's RFC determination. Plaintiff performs a wide range of activities both with and without his cane. The ALJ provided numerous limitations in his RFC determination including limiting Plaintiff to stand and walk for a total of three hours in a workday and only occasionally balancing, stooping, kneeling, crouching, and crawling. AR 21. The medical opinions provided by Plaintiff and the opinion of the state agency examiner support that Plaintiff should be able to perform work where he is only required to walk or stand for three hours. Plaintiff's testimony also supports that finding, in that he is able to walk a mile a day, grocery shop for one to two hours, do yard work, and take care of other household chores. The VE testified that there would be light work for a person like Plaintiff who could stand/walk for no more than three to four hours in a workday, albeit a restricted amount of work.  Additionally, the record does not support that Plaintiff requires his cane to ambulate at all times. Based on the record and testimonial evidence, the ALJ did not err in finding Plaintiff could perform light work.

///

///

**B.  The ALJ Properly Evaluated Plaintiff's Mental Residual Functional Capacity**

Plaintiff alleges that the ALJ erred by finding that Plaintiff's medically determinable impairments of depression and anxiety do not cause more than a minimal limitation on Plaintiff's ability to perform mental work and are therefore not severe. (Doc. No. 21 at 25.)

At step two of the five-step analysis, the ALJ is required to determine whether a plaintiff has a "severe" medical impairment or combination of impairments. 20 C.F.R. § 416.920(c).  An impairment is "severe" if it "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § § 416.920(c), 416.921(a). The evaluation at step two is a de minimis screening device to dispose of groundless claims. *Bowen v. Yukert*, 482 U.S. at 153–154 (1987); *Edlund v. Massanari*, 253 F.3d 1152, 1158 (9th Cir. 2001).  An impairment is not severe if the evidence establishes "a slight abnormality that has no more than a minimal effect on an individual[']s ability to work." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (internal quotations and citations omitted).

In determining whether a claimant's mental impairment is severe, an ALJ is required to evaluate the degree of mental limitation in four broad areas: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself. If the degree of limitation in these four areas is determined to be "mild," a plaintiff's mental impairment is generally not severe, unless there is evidence indicating a more than minimal limitation in his ability to perform basic work activities. See 20 C.F.R. § 416.920a(c)-(d).

Here, the ALJ found that Plaintiff's medically determinable impairments of depression and anxiety, "considered singly and in combination, do not cause more than minimal limitations in the [Plaintiff's] ability to perform basic mental work activities." AR 20.  The ALJ expressly found that Plaintiff's "mental impairment caused no more than a mild restriction in understanding, remembering, or applying information, interacting with others, concentrating, persisting, or maintaining pace, adapting or maintaining oneself." AR 20. The ALJ also found that Plaintiff completes "yard work, prepares meals, helps with folding laundry, drives, shops in stores, is able to handle his finances, spends time with others, finishes tasks he starts, and is able to follow instructions well." AR 20.

Plaintiff contends that the substantial evidence of record establishes that Plaintiff's mental disorders prevent him from engaging in work involving technical and/or complex tasks and limits him to only performing work involving simple, repetitive tasks. (Doc. No. 21 at 25.) Even assuming arguendo that the ALJ erred by failing to find Plaintiff's mental impairment severe at step two, any such error is harmless if the ALJ properly considered and discussed Plaintiff's mental condition at step four of the sequential evaluation. *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) ("The decision reflects that the ALJ considered any limitations posed by the bursitis at Step 4. As such, any error that the ALJ made in failing to include the bursitis at Step 2 was harmless.").

In this instance, the ALJ considered and discussed Plaintiff's mental condition at step four of the sequential evaluation. AR 23-24. At step four, the ALJ relied on the opinion of the consultative examiner, Richard Engeln, Ph.D., who opined that Plaintiff did not have any mental limitations. AR 24-25, 1126-31. Dr. Engeln found that Plaintiff presented with positive attention to dress and grooming, presented as a very verbal man, with very positive social relationship style, speech was normal and appropriate, he was cooperative and calm, had a positive outlook on tasks, no restrictions in concentration, was able to perform abstract thinking and his judgment was adequate for daily living and job adjustment. AR 1126-31. Dr. Engeln opined that Plaintiff was mentally competent to manage funds, and was verbally, socially, and cognitively capable of working a job with multidimensional instructions and independence was demanded. AR 1130-31.

The ALJ assigned significant weight to the opinion. AR 24. The ALJ noted that the opinion was consistent with the treatment record and Plaintiff's presentation at the hearing. AR 24-25. As with Dr. Michiel's opinion, Dr. Englen's opinion constitutes substantial evidence supporting the ALJ's finding that Plaintiff's mental impairment was non-severe. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (an examining physician's opinion alone constitutes substantial evidence because it rests on his own independent examination of the claimant).

Additionally, the ALJ accorded significant weight to the opinions of the State agency psychological consultants, who opined that Plaintiff did not have any mental limitations. AR 25, 130-133, 143-145, 155-57. The opinions of non-examining physicians, like the State agency medical consultants, may serve as substantial evidence when their opinions "are consistent with independent

clinical findings or other evidence in the record." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *cf. Neugebauer v. Barnhart*, 154 Fed.App'x 649, 650 (9th Cir. 2005) ("the ALJ was free to rely on non-treating agency physician reports that contained specific clinical support"). Here, as the ALJ acknowledged that the opinions of the State agency consultants were consistent with the overall record which indicated limited mental health treatment and complaints. AR 25, 130-133, 143-145, 155-57.

Furthermore, the ALJ accorded some weight to the opinion of Dr. Ekram Michiel, who completed a consultative psychiatric evaluation of Plaintiff in October 2013. AR 23, 564-67. On mental status examination, Plaintiff had normal gait and posture, no involuntary movements or specific mannerisms, kept fair eye contact, had normal speech without latency, his affect was broad and appropriate, and had goal-directed thoughts. AR 564-67. Dr. Michiel opined that Plaintiff could maintain attention and concentration to carry out simple job instructions but would be unable to carry out a multiplicity of technical and/or complex tasks. AR 276.

Dr. Michiel's opinion was contradicted by the opinions of Dr. Engeln and the state agency examiners. As such, the ALJ was required to provide "specific and legitimate reasons" supported by substantial evidence in the record to reject it. *Lester*, 81 F.3d at 830-31. In assigning little weight to Dr. Michiel's assessment, the ALJ reasoned that his opinion was not consistent with the record which indicated limited treatment for mental symptoms, the examination findings were normal and did not support the restrictions. AR 24. Here, the ALJ discounted Dr. Michiel's limitations as not supported by the medical record as a whole. AR 24. An ALJ may permissibly rejected a medical opinion of a non-treating examining physician that is unsupported by the record as a whole. *See* 20 C.F.R. § 416.927(c)(4) ("[g]enerally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion."); *Batson*, 359 F.3d at 1195; *Mendoza v. Astrue*, 371 Fed. Appx. 829, 831–32 (9th Cir. 2010) ("The ALJ permissibly rejected a medical opinion of a non-treating examining physician that was unsupported by the record as a whole.") (citation omitted). Here, the ALJ determined that the other opinions regarding Plaintiff's mental impairments were consistent with each other and Plaintiff's presentation and testimony at the hearing. AR 23-25.

Based on the above, the Court finds that the ALJ did not err in his evaluation of Plaintiff's mental impairment. Further, it is the ALJ's duty to resolve conflicts in the evidence, including

conflicting medical evidence from examining and treating physicians. *See Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir.2003) (noting that ALJ may reject the opinion of a treating physician in favor of the conflicting opinions of an examining physician). The Court must affirm the ALJ's decision even where the evidence is susceptible to more than one rational interpretation. *Molina*, 674 F.3d at 1111 ("Even when the evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record.").

## **CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court **DENIES** Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of this Court is **DIRECTED** to enter judgment in favor of Defendant Andrew M. Saul, Commissioner of Social Security, and against Plaintiff Raymond T. Sanchez.

IT IS SO ORDERED.

Dated: **March 17, 2021**                    /s/ *Barbara A. McAuliffe*
                                                                UNITED STATES MAGISTRATE JUDGE